**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- ------------------------------------------------------------------------ X

IMMANUEL PIROOZIAN, individually and
Derivatively on behalf of HIGGINS AVE LLC

                        Plaintiff

     -against-

SHAHRIAR HOMAPOUR, JUSTIN HOMAPOUR,
JUDGEMENT BUYERS LLC

- ------------------------------------------------------------------------ X

| COMPLAINT |
| --------- |
| JURY TRIAL DEMANDED |

       Plaintiff, Immanuel Piroozian ("Piroozian" or "Plaintiff") individually and derivatively on behalf of Higgins Ave LLC, by their undersigned attorneys, allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters. Plaintiffs' information and belief is based upon the investigation made by and through their attorneys, which included a review of public filings and statements made by defendants, court filings, and other publicly available information. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1. Plaintiffs bring this action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), and applicable state law, individually and derivatively on behalf of Higgins Ave LLC in connection with a fraudulent refinancing orchestrated by Shahriar Homapour ("Shahriar Homapour") with the help of his son Justin Homapour ("Justin Homapour") and entity Judgement Buyers LLC ("Judgement Buyers") that was created by Justin Homapour.

1

2. This action is the latest in the long-running dispute between Piroozian and Shahriar Homapour originating from Shahriar Homapour's breaches of fiduciary duties as Managing Member of Higgins Ave LLC, of which both Shahriar Homapour and Piroozian are members, as described in more detail *infra.*

3. Since 2010, Shahriar Homapour has controlled Higgins Ave LLC as a sole Managing Member. Since 2010 Shahriar Homapour has been making decisions on behalf of Higgins Ave LLC. Since 2010, Shahriar Homapour has been making decisions aimed at personal enrichment for his own benefit as opposed to the benefit of Higgins Ave LLC.

4. This action is brought because Shahriar Homapour together with his son Justin Homapour through an entity called Judgement Buyers devised and carried out a scheme to defraud Higgins Ave LLC and Piroozian by entering into a short-term refinancing transaction on behalf of Higgins Ave LLC despite the fact that such transaction was expressly prohibited by a written agreement, and strenuously objected to by Piroozian and their attorneys.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States—specifically, the RICO Act, 18 U.S.C. §§ 1962 and 1964.

6. Personal jurisdiction is conferred by 18 U.S.C. § 1965(a), which allows a party to institute a civil RICO action in any district in which a defendant "resides, is found, has an agent, or transacts his affairs."

7. Additionally, this Court has personal jurisdiction over the defendants because each systematically and continually conducts business throughout the State of New York.

8. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in this district under 28 U.S.C. § 1391(b), and 18 U.S.C. §§ 1965(b) and (d). Defendants regularly conduct business in this District.

## PARTIES

Plaintiffs

10. **Imanuel Piroozian** is a member Higgins Ave LLC and a resident and citizen of Nassau County, New York.

11. **Higgins Ave LLC** ("Higgins Ave LLC") is a New York limited liability company with its principal place of business and address registered with the New York Secretary of State at 173 West Shore Road, Kings Point, New York, 11024, in Nassau County.

Defendants

12. **Shahriar Hompaour** is a natural person who, at all relevant times herein, has resided in Nassau County, at 173 West Shore Road, Kings Point, New York 11024.

13. **Judgement Buyers LLC** ("Judgment Buyers") is a New York limited liability company with its principal place of business and address registered with the New York Secretary of State at 44 Hawthorne Lane, Great Neck, NY, 10023 in Nassau County.

14. **Justin Homapour** ("Justin Homapour") is a natural person who, at all relevant times herein has resided in Nassau County, at 173 West Shore Road, Kings Point, New York 11024.

15. Piroozian and Shahriar Homapour are brothers in law.

## FORMATION OF HIGGINS AVE LLC

16. On or about May 26, 2004, Shahriar Homapour and Piroozian formed Higgins Ave LLC,

with each of them holding a 50% membership interest in that entity.  Shahriar Homapour and Piroozian signed the Operating Agreement of Higgins Ave LLC, dated May 26, 2004 (the "Operating Agreement"), to memorialize the formation of this entity. (**Exhibit 1**)

17. At the time of formation both Shahriar Homapour and Piroozian were named as Managing members. They formed Higgins Ave LLC for the purpose of acquisition, joint management, and sale of the Higgins Avenue Property, which consists principally of a commercial warehouse and associated real property.

18. On or about June 28, 2004, Higgins Ave LLC purchased the property located at 133-05 32nd Ave, Queens, New York ("Higgins Avenue Property") from its prior owner, 32nd Ave LLC ("32-LLC")

19. Higgins Ave LLC purchased Higgins Ave Property subject to an existing mortgage and loan from Chinatrust Bank USA ("Chinatrust")

20. From the date of the closing of the Higgins Avenue Purchase to the present, Higgins Ave LLC has held the Higgins Avenue Property and has leased portions thereof to commercial tenants.  Initially, since Shahriar Homapour and Piroozian each owned 50% of Higgins Ave LLC, they were each entitled to half of the income generated from the property.

### Higgins Title Litigation

21. On or about January 6, 2006 -  18 months after the Higgins Avenue Purchase -  Larry Stathakis ("Stathakis"), a convicted federal felon and the purported sole member of 32-LLC (the seller of the Higgins Avenue Property), caused 32-LLC to commence a lawsuit in Supreme Court, Queens County encaptioned *32nd Ave LLC v. Angelo*

*Holding Corp., et al.,* Index No. 473/06 (N. Y. Sup. Ct. Queens County), challenging the sale and seeking, *inter alia,* to undo the Higgins Avenue Purchase and return of the Higgins Avenue Property (the "Higgins Title Litigation").

22. The complaint in that action named, among others, Shahriar Homapour and Piroozian individually as defendants, as well as Higgins Ave LLC, the buyer of the real property in issue (the Higgins Avenue Property). The complaint in the Higgins Title Litigation alleged, *inter alia,* that the sale of the Higgins Avenue Property had been the result of fraud and other misconduct, and the plaintiff sought monetary damages and to undo Higgins Ave LLC's bona fide purchase of the Higgins Avenue Property. In essence, the plaintiff alleged - falsely - that the sale of the property to Higgins Ave LLC was not properly authorized by 32-LLC.

23. In its Answer to the Higgins Title Litigation, Higgins Ave LLC denied the allegations and, *inter alia,* asserted counterclaims against 32-LLC for Unjust Enrichment and to Quiet Title (pursuant to RPAPL Article 15), declaring itself the rightful owner of the Higgins Avenue Property. Higgins Ave LLC, Piroozian and/or Shahriar Homapour also asserted various cross- claims against co-defendants, including for Unjust Enrichment, Contribution and Indemnity, Fraud and Misrepresentation. In addition, Higgins Ave LLC asserted third-party claims for contribution against Michael G. Psaros ("Psaros"), the attorney who represented the seller *(i.e.,* plaintiff 32-LLC) in connection with the Higgins Avenue Purchase.

24. Shortly after being served with the complaint in the Higgins Title Litigation, Higgins Ave LLC notified its title insurance carrier, Fidelity National Title Insurance Company of New York ("Fidelity"), of the litigation and that Higgins Ave LLC had a claim under

the $3.95 million title insurance policy Fidelity had issued to Higgins Ave LLC in connection with the Higgins Avenue Purchase, Policy No. 5312-1268179 (the "Title Policy").

25. The Higgins Title Litigation lasted for over a decade, until (as described below) after commencement of trial - after a jury had been selected and empaneled - Shahriar Homapour unilaterally, and over the strenuous objections of Piroozian, entered into a settlement which obligated Higgins Ave LLC to pay to 32- LLC (controlled by a criminal convicted of and incarcerated for bank fraud) $5.8 million to settle a case that the title insurance company and Todd Steckler expected Higgins Ave LLC to win, all as part of Shahriar Homapour's scheme to benefit himself and his family to the financial detriment of Piroozian and Higgins Ave LLC, counter to title insurance companies' express desire to litigate the matter.

### The 2010 Queens Warehouse Agreement and First Amendment

26. In early 2010, years before the settlement of the Higgins Title Litigation, Piroozian informed Shahriar Homapour that he wished to end their business relationship. Shahriar Homapour was angered by this decision, but they eventually agreed to divide up their various real estate ventures.

27. The reason Piroozian wanted to break up the relationship with Shahriar Homapour was because Piroozian learned Shahriar Homapour, and Shahriar Homapour confirmed that he had been embezzling money from their numerous business accounts. The moneys were taken for personal use.

28. Since Higgins Ave LLC was, at the time, embroiled in the Higgins Title Litigation, Shahriar Homapour and Piroozian executed the so-called "Queens Warehouse Division"

agreement, dated February 2, 2010 (the "Queens Warehouse Agreement"). (**Exhibit 2**)

29. Queens Warehouse Agreement is the culmination of the efforts of family members including Mark Harounian, Fred Obeshalom, Nader Ohebshalom, and Jacob Harounian to "bring peace to the family."

30. When Shahriar Homapour and Piroozian's business relationship began breaking apart, their respective families' personal relationship started to suffer as well.

31. Shahriar Homapour and Piroozian are a part of a close-knit family. When the relationship between Shahriar Homapour and Piroozian began to collapse, the family got involved in attempting to mediate the conflict.

32. The family mediation, among other things, attempted to resolve any potential disputes to the Higgins Title Litigation as well.

33. Since both Shahriar Homapour and Piroozian considered the possibility that they would have to give up a portion of the Higgins Ave Property, Shahriar Homapour and Piroozian, with the help of their respective family members came up with an agreement where Piroozian would put 12.5 percent of his membership interest in Higgins Ave LLC into escrow. Shahriar Homapour insisted on Piroozian placing his 12.5 percent membership interest into escrow because he was afraid that Piroozian would refuse to honor the terms of any possible settlement but was not willing to escrow his own membership interest on the same terms.

34. The "whereas" clauses of the Queens Warehouse Agreement expressly refer to the existing Higgins Title Litigation, the title insurer Fidelity "defending [Shahriar Homapour] and [Piroozian] in the litigation," and their desire to "restructure their ownership of the [Higgins Avenue] Property so that they are no longer partners."

(**Exhibit 2**)

35. By entering into the Queens Warehouse Agreement, Piroozian attempted in good faith to

end the business relationship as it concerned Higgins Ave LLC. The same cannot be said

about Shahriar Homapour.

36. Paragraph 1 of the Queens Warehouse Agreement states:

In the event that [Shahriar Hompaour] and [Piroozian] lose the Litigation, the proceeds of the title insurance policy shall be split equally between [Piroozian] and [Shahriar Hompaour] and in the event it is determined that the Property is still owned in part by the prior owners, the title policy proceeds will be divided equally between [Shahriar Hompaour] and [Piroozian] and the balance of the property will be owned equally by [Shahriar Hompaour] and [Piroozian].

37. On February 18, 2010, Shahriar Homapour and Piroozian executed a First

Amendment to the Operating Agreement ("First Amendment") (**Exhibit 3**). The

First Amendment states that "[t]he terms and conditions of that certain Queens

Warehouse Division Agreement entered into by and between the Members of the

Company herein made as of February 2, 2010, shall control, where applicable, as to the

sale of the property identified in the Queens Warehouse Division Agreement." (Id.)

38. Per the Queens Warehouse Agreement, and the First Amendment, subject to certain

conditions being met, Piroozian agreed to place his 12.5% ownership of Higgins Ave,

LLC in escrow with attorneys at the law firm of Seligson, Seligson & Rothman.

39. Paragraph 11 of the Queens Warehouse Agreement states "[o]ther than as provided in

paragraph 2, both members['] consent shall be required for a sale o[r] refinancing of the

Property."

**Settlement of Higgins Title Litigation**

40. On January 12, 2018, Shahriar Homapour as a Managing Member of Higgins Ave LLC

caused Higgins Ave to enter into a settlement agreement which forced Higgins Ave LLC to pay $5.8 million to the plaintiff in Higgins Title Litigation. ("Title Litigation Settlement")

41. Shahriar Homapour entered the Title Litigation Settlement despite the fact that even until shortly before trial in mid-January 2018, the attorney simultaneously representing Higgins Ave LLC, Piroozian and Shahriar Homapour repeatedly assured them they had a very high likelihood of prevailing in the Higgins Title Litigation.

42. Shahriar Homapour entered into the Title Litigation Settlement despite the fact that after completing the mock trial exercise organized by Fidelity, six different juries all found for the defendant (Higgins Ave LLC).

43. Shahriar Homapour entered into the settlement without consultation with Fidelity, whose representative was in attendance during jury selection.

44. After the jury selection in the Higgins Title Litigation was complete and just before trial, the lawyer who, for years, had simultaneously represented Higgins Ave LLC, Shahriar Homapour and Piroozian in the Higgins Title Litigation, informed Piroozian that he had an irreconcilable conflict, due to his clients' differing settlement positions. Piroozian opposed his lawyer's attempt to withdraw as his counsel just before the trial started because Piroozian did not want to be deprived of his long- time counsel who was prepared to try the case.

45. Right after the parties completed jury selection, however, the plaintiff 32- LLC (controlled by Stathakis) and Shahriar Homapour discussed the possibility of settling the action - without including Piroozian or Fidelity.

46. After excluding Piroozian, (by having Piroozian released from the Higgins Title

Litigation), clearing the way to settle Higgins Title Litigation over Piroozian's sternous objections from settlement discussions, Shahriar Homapour unilaterally agreed to settle with the plaintiff on behalf of Higgins Ave LLC for a $5.8 million payment by Higgins Ave LLC - which had already paid nearly four million dollars to acquire the Higgins Avenue Property years ago - to the plaintiff 32-LLC. This settlement occured, despite the fact that Shahriar Homapour had, earlier in the Higgins Title Litigation, submitted an affidavit swearing that "Higgins LLC is a bona fide purchaser for fair value" and that "32nd LLC has no claim to the [Higgins Avenue] Property."

47. At one point, Shahriar Homapour and others involved in the settlement suggested that the $5.8 million figure represented about 20-25% of the value of the Higgins Avenue Property. That meant that the property must have been valued at over $20 million, although Piroozian was never provided any substantiation for this purported estimated value. Shahriar Homapour excluded Piroozian from discussions relating to the $5.8 million dollar settlement and from any deliberations or discussions about whether it was in the best interest of Higgins Ave LLC to settle at all (rather than proceed to trial). Piroozian was not given any input or opportunity to weigh in on the risks associated with going to trial rather than settling.

48. Notably, Shahriar Homapour failed to inform Piroozian or the Higgins Title Litigation Court that in 2016, he had commissioned an appraisal of the Higgins Avenue Property on behalf of Higgins Ave LLC, which valued the property at approximately $9.8 million, significantly lower than the alleged $20 million justification for the settlement. Piroozian was not made aware of this vital appraisal until after the court approved the settlement negotiated by Shahriar Homapour and only learned of it through a third party, not

Shahriar Homapour himself. The undisclosed appraisal of $9.8 million contradicts the supposed $20 million valuation used to justify the $5.8 million settlement.

49. As a result, Shahriar Homapour agreed to settle a case in which Higgins Ave LLC was expected to prevail regarding a property that it had owned since 2004 and for which it had already paid millions, by paying the plaintiff (controlled by a convicted felon and with no valid ownership claim to the Higgins Avenue Property) $5.8 million, which was more than half the appraised value of the property. And, as noted below, Shahriar Homapour unilaterally settled the Higgins Title Litigation without even getting the title insurer Fidelity to contribute any funds to that settlement. Fidelity's obligation to pay for the insured's attorneys' fees was previously established in a separate lawsuit, which was won by Higgins Ave LLC in significant part and expense. Therefore, Fidelity was obligated to cover the attorneys' fees for Higgins Ave LLC. During the trial, a representative from Fidelity was present in the courtroom, prepared to observe the proceedings. It was later discovered that, despite having a Fidelity representative readily available at all times, Shahriar Homapour (and thus Higgins Ave LLC) failed to request or even ask that Fidelity contribute any money to the settlement.

50. Shahriar Homapour's actions resulted in the waste of the valuable asset, the Title Policy, without any reasonable cause. Fidelity now states that it is exempt from covering the settlement as it was not included in the discussions, was not asked to approve the settlement's terms and amount, and was not consulted before Higgins Ave LLC (through Shahriar Homapour) changed its legal representation. This constitutes a complete neglect of Shahriar Homapour's duties as a fiduciary.

51. In the end, despite Piroozian's strong objections, the settling parties (Shahriar Homapour

signing on behalf of Higgins Ave LLC, plaintiff 32-LLC as well as third-party defendant Psaros) signed a rushed and poorly-drafted, hand-written Settlement Agreement, dated January 12, 2018 (the "Settlement Agreement"). Pursuant to the terms of that fundamentally flawed Settlement Agreement, the Higgins Title Litigation was settled.

52. Under the Settlement Agreement, Shahriar Homapour caused Higgins Ave LLC to agree to pay $5.8 million to plaintiff 32-LLC. Notably, the handwritten Settlement Agreement originally bound both Higgins Ave LLC and Shahriar Homapour (a party to the case) to make such payment - but Shahriar Homapour managed to strike through his name from the document to avoid this personal obligation and, instead, to impose the obligation to pay the settlement amount solely on Higgins Ave LLC.

53. The Settlement Agreement which Shahriar Homapour orchestrated and signed on behalf of Higgins Ave LLC's behalf also permitted for the immediate entry of Judgment against Higgins Ave LLC:

"The Court hereby grants judgment to Plaintiff and against Higgins in the amount of $5,800,000.00 which judgment shall be entered immediately and without further notice to any party. To the extent necessary to effectuate this paragraph counsel shall prepare the judgment or any further documents that may be necessary. Interest on the judgment is waived and will not accrue until October 1, 2018."

54. In connection with Higgins Ave LLC's payment obligations, the Settlement Agreement stated that "Higgins and/or its Managing Member can refinance any property owned by Higgins in order to pay the settlement funds." The Settlement Agreement, however, makes no mention of the Queens Warehouse Agreement and its provision. stating that "[ other than as provided in paragraph 2, both members consent shall be required for a sale or refinancing of the Property."

55. On information and belief, Shahriar Homapour made no real attempt to refinance

Higgins Ave Property between the entry of the judgment and refinancing by the Judgment Buyers – a company wholly owned by his son.

**<u>Judgement Buyers Refinancing</u>**

56. Since at least August 2018 Shahriar Homapour along with Judgment Buyers and Justin Homapour began to concoct a scheme for the purpose of depriving Piroozian of his contractual rights under the Queens Warehouse Agreement, and breaching his fiduciary duty as a managing member of Higgins Ave LLC. ("Fraudulent Scheme")

57. The Fraudulent Scheme described in more detail below bypassed the Queens Warehouse Agreement's requirement for both member's consent to sale or refinance and deprived Piroozian of his contractual rights.

*Higgins Ave LLC's Loan from Chinatrust Bank*

58. By way of the background, Higgins Ave LLC took title to Higgins Ave Property subject to an existing loan from Chinatrust ("Chinatrust Loan").

59. On October 20, 2005, Higgins Ave LLC signed a promissory note with Chinatrust, acknowledging a debt to Chinatrust in the amount of $3,359,497.99 with an interest rate of 6.15% (**Exhibit 4 - 2005 Promissory Note).** In the event of default Chinatrust had an option to charge a default interest rate of 7% above the interest rate:

"Upon Borrower's default or the occurrence of an Acceleration Event, or the failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to seven (7%) percentage points over the then interest rate. The interest rate upon default will not exceed the maximum rate permitted by applicable law."

(<u>Id</u>.)

60. The exact default interest rate under the Chinatrust Loan is unclear from the note as the "then interest rate" is not defined in the loan documents.

61. The previous borrower under the Chinatrust Loan, 32-LLC Ave LLC, signed an escrow agreement and deposited $360,000 (known as the "Escrow Amount") with Chinatrust to guarantee that they would fulfill their post-closing repair obligations.  (**Exhibit 5 - 32ⁿᵈ Ave Escrow Agreement) .**

62. In 2005 Higgins Ave LLC took over 32-LLC's obligations under escrow agreement and took over the Escrow Amount.

63. From 2004 to 2016, the terms of the Chinatrust Loan were modified several times through Change in Terms Agreements. This included changes to the loan maturity date and interest rate. It is believed that the latest change in terms agreement was signed by Chinatrust and Higgins Ave LLC on August 15, 2016, setting the maturity date of the Chinatrust Loan to August 31, 2018 and keeping the fixed interest rate at 4.25%[1]. (**See Exhibit 6 - 2016 Change in terms agreement.**)

64. On September 10, 2018, Chinatrust approved a short-term loan extension to Chinatrust Loan. (**See Exhibit 7 - Short-term loan extension to 11/30/18**

65. On January 31, 2019, Chinatrust issued a notice of default on the Chinatrust Loan. (**Exhibit 8 - Notice of Default**)

***Conversion of Settlement Agreement into Judgment and Refinancing Efforts by Piroozian***

66. On February 2, 2018, Settlement Agreement was converted into a judgment pursuant to the terms of the Settlement Agreement ("Title Litigation Judgment"). (**Exhibit 9 - Title Litigation Judgment**)

67. As mentioned *supra*, Shahriar Homapour signed the Settlement Agreement on behalf of

---

[1] Previous Chane in Terms Agreement dated May 31, 2015 changed the interest rate from 6.15% to 4.25%

Higgins Ave LLC over strenuous objections from Piroozian.

68. Pursuant to the terms of the Settlement Agreement, Higgins Ave LLC had to pay $500,000 to 32-LLC on or before February 16, 2018. Pursuant to the terms of the same Settlement Agreement, 32-LLC was allowed to and did convert the agreement into the Judgment ("Higgins Title Judgment")

69. Interestingly enough, while Shahriar Homapour considered, and still considers to be a majority member of Higgins Ave LLC with 67.5% membership interest, when it came to satisfying the $500,000 payment of Settlement Agreement obligations, he wanted Piroozian to contribute 50% of $500,000! (**Exhibit 10 – January 11, 2018 email).**

70. Despite no longer being the managing member of Higgins Ave LLC, Piroozian sought refinancing options that would benefit the company. This was due to the fact that Higgins Ave LLC was obligated to pay off the outstanding balance of $5.3 million on the $5.8 million Higgins Title Judgment by September 28, 2018.

71. To that effect, in June 2018, Piroozian successfully obtained a term sheet from Bethpage Federal Credit Union for a refinancing amount of $10,350,000 with an interest rate of 4.625% for a five-year term. (**Exhibit 11 - Bethpage Term sheet**)

72. But not only did Shahriar Homapour refused to consider this commercially-sound proposal, but on information and belief, he called Bethpage and cancelled the proposed refinancing.

73. Due to Shahriar Homapour's interference, Bethpage Federal Credit Union withdrew the application for refinancing. (**Exhibit 12 – Bethpage Withdrawal**)

74. The refinancing from Bethpage Federal Credit Union would have effectively paid off the Chinatrust Loan, settled the outstanding balance of the Higgins Title Judgment, and left

some money for the operations of Higgins Ave LLC.

75. This is not surprising, as Shahriar Homapour was concurrently devising the Fraudulent Scheme with his son, Justin Homapour and Judgment Buyers.

***Evidence of Shahriar Homapour's Control and Influence Over Judgement Buyers***

76. The text messages ("Group Chat") in the attached exhibits show that Shahriar Homapour, Jeffrey Homapour, and Justin Homapour were in communication regarding the Fraudulent Scheme.

77. The text messages in the Group Chat are identified by the phone numbers they were sent from. Shahriar Homapour's messages are associated with "D" and the phone number 917-686-8641, Jeffrey Homapour's messages are associated with "JH" and the phone number 516-770-4294, and Justin Homapour's messages are associated with the phone number 516-770-4297.

78. Jeffrey and Justin Homapour are Shahriar Homapour's children, with Jeffrey being an attorney.

79. The Group Chat reveals that Shahriar Homapour was discussing with his children how to acquire the Higgins Ave Property while maximizing his own profit.

80. For instance, in a 6 a.m. message from the Group Chat, Shahriar states his intention to "force him to submit an offer as it states in the warehouse agreement and then buy it less any broker fees and transfer taxes as it states in the agreement." (**Exhibit 13**, Higgins 042042)

81. In another text message from the Group Chat sent at 6:22 a.m., Shahriar expresses his desire to avoid an auction, stating "I don't want it to go to an auction because if it does I don't have the option of buying his shares less any expenses." (Id.)

82. As the sole managing member of Higgins Ave LLC, Shahriar has fiduciary duties to the company and its non-managing members. However, the text messages demonstrate that his only concern is his own self-interest.

83. The Group Chat shows that Judgement Buyers and Shahriar Homapour are closely connected. Shahriar Homapour had complete control and influence over the formation and management of Judgement Buyers.

84. The Group Chat also reveals that Justin Homapour kept his father, Shahriar Homapour, informed of every move made by Judgement Buyers. Justin Homapour reported to Shahriar when the LLC was formed and throughout its existence. (**Exhibit 14**, Higgins 042049).

85. Shahriar Homapour controlled all aspects of the Judgment Buyers, including small details like the type of bank account to open to avoid bank fees "Also speak with Ryan tomorrow to make the account you opened for Judgment Buyers into saving and checking. Transfer the money into savings and leave $5,000 into its checking so **we** don't get monthly charges." [emphasis added] (**Exhibit 15**, Higgins 042060) The "we" in the text message is very indicative that Shahriar Homapour never thought of Judgement Buyers as an independent entity.

86. Neither Justin Homapour nor Judgement Buyers had means to finance their contemplated Fraudulent Scheme to refinance. It was Shahriar Homapour that had to arrange financing for the Fraudulent Scheme "… I spoke with Papa and he has a million to loan and you should ask him to see if he's willing to give it to you at 4.5% interest for six months, and if you said yes, get it from him tomorrow & a note with your personal guarantee." "Papa" is presumably Shahriar Homapour's father. (**Exhibit 16**, Higgins

042086)

87. Justin Homapour always sought guidance from his father Shahriar Homapour before taking any actions on behalf of Judgment Buyers with taking assignment of the Higgins Title Judgment and refinancing of the existing Chinatrust Loan.

88. He promptly shared proof of funds necessary to purchase the Chinatrust Loan with his father (**Exhibit 16**, Higgins 042075)

89. Despite being the sole member of Judgment Buyers, Justin Homapour appeared unsure about communicating with its attorney and relied on his father for direction. For example, Shahriar Homapour provided a text message for Justin to send to the attorney and instructed him on what to ask: "This is what you have to ask him: Do you think we should send an e-mail to AUSA telling him that we have some friends and family members who are willing to take assignment of the judgment and charge Higgins A lower interest and not enforce the judgment for six months until the dispute between Higgins' Partners is resolved and we want his blessing to release the forms to Gardner? (**Exhibit 16** See Higgins 042084, 042097)

90. Shahriar Homapour even directed Justin Homapour on how much retainer payment to send to Judgement Buyers' attorney (**Exhibit 17**, Higgins 042129)

91. When Shahriar Homapour is unhappy with the amount of time the assignment of Chinatrust Loan is taking he is directing his son to ask the Judgement Buyers attorney to ask questions from China Trust Bank questions of Judgement Buyers' attorney. (**Exhibit 18**, Higgins 042166)

92. When the issue of litigation fees incurred by China Trust in the Higgins Title Litigation arose, Justin once again looked to his father for guidance. (**Exhibit 19**; Higgins 042172-

042177).

93. Furthermore, it appears that both Shahriar and Jeffrey Homapour had access to Justin's email account and could send emails as if they were from him.  (**Exhibit 19**; Higgins 042196)

*Judgment Buyers Refinancing*

94. Piroozian learned of the proposed refinancing by the Judgment Buyers approximately on February 13, 2019, and objected to the transaction. This was more than a year after Shahriar Homapour stated in open court that he would refinance, after 32-LLC began enforcement actions on the Higgins Title Judgment, and after Chinatrust issued a default on Chinatrust Loan.

95. On or about March 1, 2019, Judgement Buyers purchased a Chinatrust Loan from Chinatrust for $2,715,515.86 ("Chinatrust Loan Purchase"). (**Exhibit 20**)

96. Chinatrust Loan Purchase included $360,753.30 of Escrow Amount previously held by Chinatrust.

97. The Escrow Amount was never been disbursed to Higgins Ave LLC.

98. On information and belief Judgement Buyers kept the escrow funds of $360,753.30

99. On March 18, 2019, Shahriar Homapour in his capacity as a Managing Member of Higgins Ave LLC borrowed $5,000,000 from Judgment Buyers. (**Exhibit 21**) ("Judgment Buyers Note"). The Judgment Buyers Note was in essence an "interest only" loan with a maturity date of March 17, 2020.

100. By having Judgment Buyers first assume the Chinatrust Loan through Chinatrust Loan Purchase and then taking out a loan a $5,000,000 loan from Judgment Buyers, Shahriar Homapour bypassed the contractual requirement of the Queens Warehouse Agreement

which required consent of both members for the refinancing.

101. A refinancing has been defined as "an exchange of an old debt for a new debt, [such] as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan." <u>Rosen v. Sapir</u>, 20-cv-5844 (RA), at *10 (S.D.N.Y. Sep. 30, 2021) (citing Black's Law Dictionary)

102. Thus with Shahriar Homapour's cooperation Judgement Buyers became holders of two loans

103. On or about June 10, 2021, 2.5 years after Piroozian proposed refinancing from BFCU, Higgins Ave LLC refinanced the Judgment Buyers loan with the East West Bank. Judgment Buyers LLC was paid $7,966,229.80.

104. Upon information and belief, Shahriar Hompour never attempted to renegotiate the Judgment Buyer's loan for over 2.5 years.

105. Judging by the June 9, 2021 payoff letter for the Judgement Buyers, Judgment Buyers charged default interest on both loans for about 2.5 years to Higgins Ave LLC. (**Exhibit 22**)

106. At his deposition on September 15, 2022, Shahriar Homapour testified that after March 2020, the Judgment Buyers Note went into default and he never attempted to renegotiate the default interest rate, despite the fact that in March 2020, per the order of Governor Cuomo at the time, the State of New York went into the state of a "lockdown."

107. At his deposition on February 28, 2023, Shahriar Homapour testified that he invested his own money into Judgment Buyers.

**Demand Futility**

108. This action is brought, in part, to assert derivative claims on behalf of Higgins Ave LLC, an entity in which Plaintiff Piroozian is and was at all relevant times a Member. As described herein, Defendant Shahriar Homapour completely controls Higgins Ave LLC and since 2010 has served as its sole Managing Member. Shahriar Homapour is incapable of making an impartial decision as to whether to bring this suit, asserting claims on behalf of Higgins Ave LLC, against himself. All the misconduct alleged herein involves, *inter alia,* multiple and ongoing breaches of duties on the part of Shahriar Homapour.

109. Also alleged is Shahriar Homapour's misuse of Higgins Ave LLC's assets for his own personal gain, and the gain of his sons, to the detriment of Higgins Ave LLC. For years, Shahriar Homapour has displayed manifest disloyalty, lack of transparency and complete disregard for the fiduciary duties he owes Higgins Ave LLC.

110. In short, and as described with further particularity above, (i) Higgins Ave LLC is controlled entirely and solely by Shahriar Homapour, (ii) Shahriar Homapour had a self-interest in the challenged transactions and continued misconduct, and (iii) the challenged transactions and misconduct are so egregious that they could not have been the product of sound business judgment. Under these circumstances, described in greater detail above, it would be futile to demand that Shahriar Homapour pursue, against himself, these derivative claims on behalf of Higgins Ave LLC with respect to his own misconduct. There are no independent directors or officers at Higgins Ave LLC - it is completely controlled by Shahriar Homapour - and so there are no other persons in a position possibly to compel Higgins Ave LLC to assert these derivative claims on

its own behalf. In short, the only person upon whom demand could be made is Shahriar Homapour, and demanding that Shahriar Homapour (who is neither independent nor disinterested) bring this suit against himself would be futile.

## RICO ALLEGATIONS

### The Enterprise

111. For purposes of this claim, the RICO "enterprise" is an association-in-fact, as the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of the Defendants and Judgement Buyers, including their respective officers, directors, employees, agents and direct and indirect subsidiaries (the "Enterprise"). The Enterprise was separate and distinct from the persons that constituted the Enterprise.

112. The Enterprise was primarily managed by Shahriar Homapour, who organized the fraudulent scheme and procured the involvement of the Defendants. Each of the Defendants, however, agreed to, and did, participate in the conduct of the Enterprise, and carried out their roles using broad and independent discretion.

113. The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding Higgins Ave LLC and Piroozian by allowing the almost $7.5 million loan to Higgins Ave LLC to go into default and repeatedly overcharge Higgins Ave LLC the default rate of more than 9% per year.

114. At all relevant times, the Enterprise was engaged in and its activities affected interstate commerce. The proceeds of the Enterprise were distributed to its participants, Judgement Buyers and Defendants.

115. The Enterprise operated since at least September of 2018 to approximately July of 2021. The Enterprise had an ascertainable structure separate and apart from the pattern of

racketeering activity in which the Defendants and Judgement Buyers engaged.

<u>The Pattern of Racketeering Activity</u>

116. At all relevant times, in violation of 18 U.S.C. § 1962(a) - (d), the Defendants and Judgement Buyers conducted the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5) by virtue of the conduct described in this complaint. The RICO Defendants and Judgement Buyers have conducted the affairs of the Enterprise and participated in the operation and management thereof in the conduct described supra.

<u>The Predicate Acts of Mail and Wire Fraud Including "Honest Services" Fraud</u>

117. The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344. Specifically, the Defendants and Judgement Buyers engaged in an intentional scheme or artifice to defraud Higgins Ave LLC and Piroozian and to obtain money or property from Higgins Ave LLC through false or fraudulent pretenses, representations and promises.

118. The conduct of Defendants and Judgement Buyers in violation of the mail and wire fraud statutes included, without limitation, a Fraudulent Scheme to deprive Piroozian of his intangible rights to Shahriar Homapour's "honest services" as a managing member of Higgins Ave LLC by failing to inform Piroozian of the refinancing scheme he entered into with the Judgment Buyers in violation of 18 U.S.C. § 1346. As alleged above, Shahriar Homapour owed Piroozian a contractual obligation to obtain his consent in connection of the refinancing of Higgins Ave Property. In addition, Shahriar Homapour had fiduciary obligations to both Higgins Ave LLC and Piroozian as a Managing Member of Higgins Ave LLC. Piroozian owed a duty to render those service in an honest manner.

Nevertheless, Piroozian misused his position as a managing member to enrich himself and his son at the expense of Piroozian and Higgins Ave LLC by allowing the loan to go into default, at almost double the existing refinance rates at the time. Shahriar Homapour thereby breached his obligations to render "honest services." Each of the Defendants intentionally and willfully conspired and participated in Shahriar Homapour's "honest services" violations. Specifically, each of the Defendants participated in devising and carrying out the scheme through the activities alleged above.

119. Omissions, false statements and mail and/or wire communications of Defendants and Judgement Buyers in furtherance of the scheme constituted predicate acts of mail and/or wire fraud.

120. It was reasonably foreseeable to Defendants and Judgement Buyers that the mails and/or wires would be used in furtherance of the Fraudulent Scheme, and the mails and/or wires were in fact used to further and execute the scheme.

121. The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions. The precise dates of such transmissions cannot be alleged without access to the books and records of Defendants and Judgement Buyers.

122. For the purpose of furthering and executing the Fraudulent Scheme, Defendants and Judgement Buyers regularly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, electronic data and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier.

123. For example, every month between March 2019 at least until March 2020, Shahriar

Homapour on behalf of Higgins Ave LLC mails the checks to Judgment Buyers for the two loans. One in the amount of $18,750 and another one in the amount of $24,393.48 (**Exhibit 23**, Higgins 059500 – 059501)

124. These are only examples of certain instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by Defendants and Judgement Buyers. Each electronic and/or postal transmission was incident to an essential part of the Fraudulent Scheme.

125. Each such electronic and/or postal transmission was incident to an essential part of the Fraudulent Scheme.

126. Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud Piroozian and Higgins Ave LLC.

127. Defendants and Judgement Buyers each participated in the Fraudulent Scheme to defraud knowingly, willfully and with a specific intent to defraud Higgins Ave LLC and Piroozian into paying on an unauthorized loan and causing Higgins Ave LLC to incur default rate and other unauthorized charges in connection with the Judgment Buyers loan.

128. The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but related acts aimed at the common purpose and goal of defrauding Piroozian and Higgins Ave LLC into paying Judgement Buyers an unauthorized loan and causing Higgins Ave LLC to incur default rate and other unauthorized charges in connection with the Judgment Buyers loan, and causing Defendants and Judgement Buyers to reap illicit profits.

129. Defendants and Judgement Buyers were common participants in the predicate acts. Their

activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive Piroozian and deprive him of the benefit of owning the Higgins Ave Property.

## **The Predicate Acts of Extortion, Attempted Extortion, And Conspiracy to Commit Extortion.**

130. The pattern of racketeering activity also consisted of extortion, attempted extortion, and conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(a).

131. As alleged above, the Queens Warehouse Agreement, both Shahriar Homapour and Piroozian's consent was required for refinancing of Higgins Ave Property. Nothing in the Queens Warehouse Agreement authorized Shahriar Homapour to enter into the refinancing the Higgins Ave Property without Piroozian's consent. Nevertheless, Defendant's and the Judgment Buyers entered refinanced Higgins Ave Property without Piroozian's consent.

132. The Judgment Buyers loan to Higgins Ave LLC was in essence an "interest only" loan, payable at 5% per annum.

133. The Mortgage Agreement between Higgins Ave LLC and the Judgment Buyers allowed Judgment Buyers to foreclose on Higgins Ave Property in the event of default

134. At all relevant times, by virtue of the conduct alleged above, Defendants and the Judgment Buyers induced, and attempted and conspired to induce Higgins Ave LLC and Piroozian to pay the unauthorized loan through the wrongful use of actual or threatened fear of economic harm. Specifically, Defendants and the Judgment Buyers used and attempted and conspired to use, the actual or threatened fear of foreclosure to induce Piroozian and Higgins Ave LLC to pay for this improper loan.

135. By virtue of the facts alleged above, Piroozian reasonably believed: (i) that Defendants and Judgment Buyers possessed the power to collect any possible unpaid fees on the Judgment Buyers loan through foreclosure; and (ii) that Defendants and Judgment Buyers would exploit that power and foreclose if Higgins Ave LLC failed to make payments on the Judgment Buyers loan.

136. Additionally, by virtue of the facts alleged above, Defendants and Judgment Buyers agreed to engage in the acts alleged above, and intentionally performed acts, including, without limitation, the acts alleged above, that, under the circumstances as Defendants and Judgment Buyers believed them to be, constituted violations of the Hobbs Act and/or substantial steps in the commission of a Hobbs Act violation. Moreover, Defendants and GMACM thereby affected and intended to affect interstate commerce.

137. Higgins Ave LLC and Piroozian received nothing of value in exchange for payment on the Judgment Buyers loan.

### Injury to Plaintiffs

138. As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants and Judgment Buyers, Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c). Higgins Ave LLC paid on the unauthorized loan to Judgment Buyers by reason, and as a direct, proximate and foreseeable result, of the scheme alleged.

139. Under the provisions of 18 U.S.C. § 1964(c), the Defendants are jointly and severally liable to Plaintiff and for three times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

140. All Defendants are liable for their respective roles in the scheme. Shahriar Homapour

helped devise the scheme and participated in the scheme by helping orchestrate

Judgment Buyers assuming the loan from Chinatrust and issuing a note to Higgins Ave

LLC. Shahriar Homapour also made payments on the loan from the account of Higgins

Ave LLC. Shahriar Homapour allowed both loans to go into default and accumulate

default interest rates.

141. Justin Homapour and the Judgment Buyers willingly participated in the scheme and

ripped the benefits thereof.

142. Higgins Ave LLC and Piroozian has been damaged as the result of the scheme in the

amount to be determined at trial.

143. Plaintiff has suffered a concrete and particularized financial loss as a result of the

defendant's conduct.

**Count I**
**Using And Investing Income Derived From Racketeering**
**(Derivatively On Behalf of Higgins Ave LLC, Against All Defendants)**
**RICO – 18 U.S.C. § 1962(a)**

144. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

145. Plaintiffs, each Defendant, and Judgement Buyers, are "persons," as that term is defined

in 18 U.S.C. §§ 1961(3) and 1964(c).

146. Defendants received income derived, directly or indirectly, from a pattern of

racketeering activity affecting interstate and commerce.

147. Defendants derived the income by defrauding Higgins Ave LLC and Piroozian 18

U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1951

(interference with commerce).

148. Plaintiff was directly and proximately harmed by these financial losses caused by the

pattern of racketeering activity, including the predicate acts described above.

149. Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1964(c).

## Count II
### Acquisition of an "Interest in or Control of" an Enterprise
### (Derivatively On Behalf of Higgins Ave LLC, Against All Defendants)
### RICO – 18 U.S.C. § 1962(b)

150. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

151. Plaintiffs, each Defendant, and Judgement Buyers, are "persons," as that term is defined in 18 U.S.C. §§ 1961(3) and 1964(c).

152. Defendants through a pattern of racketeering activities did acquire, directly or indirectly, an interest in control the Enterprise

153. The activities of the Enterprise affect interstate commerce.

154. Plaintiff was directly and proximately harmed by these financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

155. Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1964(c).

## COUNT III
### Employment Or Association With An Enterprise Engaged In Racketeering
### (Derivatively On Behalf of Higgins Ave LLC, Against All Defendants)
### RICO – 18 U.S.C. § 1962(c)

156. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

157. Plaintiffs, each Defendant, and Judgement Buyers, are "persons," as that term is defined in 18 U.S.C. §§ 1961(3) and 1964(c).

158. Defendants were employed by or associated with an enterprise engaged in, or the activities of which affect, interstate commerce.

159. Defendants were employed by or associated with the enterprise through a pattern of

racketeering activities.

160. Plaintiff was directly and proximately harmed by these financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

161. Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1964(c).

## COUNT IV
### Conspiracy To Commit RICO Violations
### (Derivatively on Behalf of Higgins Ave LLC, Against All Defendants)
### RICO – 18 U.S.C. § 1962(d)

162. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

163. Plaintiffs, each Defendant, and Judgement Buyers, are "persons," as that term is defined in 18 U.S.C. §§ 1961(3) and 1964(c).

164. Defendants did conspire and commit violations of 18 U.S.C. § 1962 (a), (b), and (c) as described above.

165. Plaintiff was directly and proximately harmed by these financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

166. Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1964(c).

## COUNT V
### Aiding and Abetting Breach of Fiduciary Duty
### (Direct and Derivate Claim by Plaintiff)
### Against Judgment Buyers and Justin Homapour

167. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

168. By virtue of the First Amendment, Shahriar Homapour became the sole managing member of Higgins Ave LLC (**Exhibit 3**).

169. Shahriar Homapour owed fiduciary duties to both Higgins Ave LLC and to Piroozian.

170. By failing to inform, and on information and belief trying to conceal the proposed refinancing of the loan by the Judgment Buyers, Shahriar Homapour breached his fiduciary duty to both Higgins Ave and to Piroozian.

171. On information and belief Justin Homapour and Judgment Buyers were aware of the Queens Warehouse Agreement.

172. On information and belief Justin Homapour and Judgment Buyers were aware that Queens Warehouse Agreement required signatures of both members for sale or refinancing, but nonetheless willingly participated in refinancing.

173. By virtue of their participation in the refinancing Judgment Buyers and Justin Homapour provided substantial assistance to Shahriar Homapour

174. By virtue of receiving funds from default interest charged on loans from the refinancing Judgment Buyers and Justin Homapour provided substantial assistance to Shahriar Homapour.

175. Due to the actions of Judgment Buyers and Justin Homapour, Higgins Ave LLC suffered financial farm.

176. Due to the actions Judgment Buyers and Justin Homapour Piroozian suffered harm in not being able to exercise the right granted to him by the Queens Warehouse Agreement.

177. Plaintiff is entitled to damages, the amount of which is to be determined at trial, including costs and attorneys' fees of bringing this action.

**COUNT VI**
**Civil Conspiracy**
**(Direct and Derivate Claim by Plaintiff)**
**Against all Defendants**

178. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

179. Shahriar Homapour, Justin Homapour, and Judgment Buyers LLC entered into an agreement to deprive Piroozian of his rights under the Queens Warehouse Agreement and breach Shahriar Homapour's fiduciary duty as a Managing Member of Higgins Ave LLC.

180. Defendants committed overt acts in furtherance of the conspiracy, such as assuming the loan from Chinatrust, issuing a note by the Judgment Buyers, and collecting payment on both loans

181. All Defendants participated in the conspiracy willfully and intentionally.

182. As the result of Defendant's actions, Higgins Ave suffered financial harm

183. As the result of Defendant's action, Piroozian suffered harm in not being able to exercise the right granted to him by the Queens Warehouse Agreement.

184. Plaintiff is entitled to damages, the amount of which is to be determined at trial, including costs and attorneys' fees of bringing this action.

## COUNT VII
### Tortious Interference with Contract
### (Direct Claim by Plaintiff)
### Against Justin Homapour and Judgment Buyers

185. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

186. Piroozian and Shahriar Homapour have a valid contract under Queens Warehouse Agreement.

187. Judgment Buyers and Justin Homapour knew of Piroozian's contractual rights under the Queens Warehouse Agreement.

188. Judgment Buyers and Justin Homapour intentionally interfered with Piroozian's contractual rights under Queens Warehouse Agreement by purchasing a loan from

Chinatrust and subsequently issuing a $5,000,000 note to Higgins Ave LLC, all in contravention of the Queens Warehouse Agreement's requirement of both members' signature for refinancing.

189. As the result of Judgment Buyers' and Justin Homapour's action, Piroozian suffered harm in not being able to exercise the right granted to him by the Queens Warehouse Agreement.

190. Plaintiff is entitled to damages, the amount of which is to be determined at trial, including costs and attorneys' fees of bringing this action.

**COUNT VIII**
**Unjust Enrichment**
**(Derivative Claim by Higgins Ave LLC)**
**Against Justin Homapour and Judgment Buyers**

191. Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

192. By virtue of the conduct described above, Judgment Buyers and Justin Homapour were unjustly enriched at the expense of Higgins Ave LLC.

193. Equity and good conscience militate against permitting Judgement Buyers and Justin Homapour to retain the benefits of the unauthorized loans.

194. Plaintiff is entitled to damages, the amount of which is to be decided at trial, including costs and attorneys' fees of bringing this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment against Defendants:

a. Finding that Defendants' conduct violates RICO 18 U.S.C. § 1962 and that Plaintiff was injured by this conduct;

b. Finding that Defendant's conduct constitutes civil conspiracy;

c.  Finding that Judgment Buyers and Justin Homapour's conduct constitutes aiding and abetting breach of fiduciary duty; tortious interference with contract; and unjust enrichment.

d.  Awarding equitable relief requiring Defendants to disgorge and pay back all sums they have collected from Higgins Ave LLC;

e.  Ordering Defendants to provide an accounting all profits incurred from use of Higgins Ave LLCs monies, including fees and interest;

f. Awarding actual, nominal, punitive, compensatory, and consequential damages in the amount to be proved at trial;

g.  Ordering trebling of damages and attorney's fees under RICO;

      h. Awarding such other relief as the Court deems just and proper.

Dated: March 30, 2023


/s/ Alexander Kadochnikov
Alexander Kadochnikov, Esq.
Shiryak, Bowman, Anderson
Gill & Kadochnikov, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
718-577-3261
akadochnikov@sbagk.com

## VERIFICATION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23.1

I, Immanuel Piroozian declare the following to be true and correct to the best of my knowledge and belief under penalties of perjury under 28 U.S.C. § 1746:

1. At all times relevant times stated in the above Complaint, I was a member of Higgins Ave LLC

2. This action is not a collusive one to confer jurisdiction that this Court would otherwise lack.

3. I have read the foregoing Complaint and Exhibits attached thereto, and the same are true and correct to my knowledge, except for those matters stated on information and belief, and as to those matters, I believe them to be true

Dated: March 22, 2023

Immanuel Piroozian