UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

IMMANUEL PIROOZIAN, individually and       :
derivatively on behalf of HIGGINS AVE LLC,    :
                                                                  :
                            Plaintiff,    :     MEMORANDUM & ORDER
                                                                  :
             -against-                     :     No. 1:23-cv-02445 (ENV) (RML)
                                                                  :
SHAHRIAR HOMAPOUR, JUSTIN            :
HOMAPOUR, JUDGEMENT BUYERS LLC,   :
                                                                  x
                Defendants.

----------------------------------------------------------------

VITALIANO, D.J.

On March 30, 2023, plaintiff Immanuel Piroozian commenced this action against his brother-in-law Shahriar Homapour, Homapour's son Justin Homapour, and Judgement Buyers LLC, a company controlled by the Homapours. Piroozian brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and related state law claims. The essence of Piroozian's complaint is that Shahriar Homapour orchestrated a scheme to defraud him by refinancing a property in which he held an ownership interest without his consent and on unfair terms. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot., Dkt. 29-25. For the following reasons, defendants' motion to dismiss is granted.

<u>Background</u>[1]

On or about May 26, 2004, Piroozian and Shahriar Homapour formed a limited liability

---

[1] The facts are drawn from the complaint and taken as true, with all reasonable inferences drawn in plaintiff's favor, as they must be on a motion to dismiss. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). All citations refer to the Electronic Case Filing ("ECF") pagination unless otherwise specified.

1

company called Higgins Ave LLC for the purpose of acquiring and managing a commercial warehouse in Queens ("Higgins Avenue Property").  Compl. ¶¶ 16–18.  Piroozian and Homapour each held a 50% membership interest and jointly managed the LLC.  *Id.* ¶¶ 16–17.  Under their direction, Higgins Ave LLC purchased the Higgins Avenue Property on or about June 28, 2004, subject to an existing mortgage and loan from Chinatrust Bank USA.  *Id.* ¶¶ 18–19.  From the date of the closing to the present, Higgins Ave LLC has held the Higgins Avenue Property and leased portions of the premises to commercial tenants.  *Id.* ¶ 20.

In 2006, the party who sold the Higgins Avenue Property to Piroozian and Homapour, Larry Stathakis, commenced a lawsuit against Higgins Ave LLC challenging the sale on the basis that it was the result of fraud and other misconduct.  *Id.* ¶¶ 21–22.  Stathakis sought to undo the purchase and force the return of the property.  *Id.* ¶ 21.  Meanwhile, during the course of the litigation, Piroozian and Homapour's relationship soured, and Piroozian informed Homapour in 2010 that he wished to end their business relationship.  *Id.* ¶ 26.  In order to do so, Piroozian and Homapour executed a contract on February 2, 2010 (the "Queens Warehouse Agreement") under which Piroozian would put 12.5% of his membership interest in Higgins Ave LLC into escrow and Homapour would become the sole managing member.  *Id.* ¶¶ 28, 33, 70.  The Queens Warehouse Agreement stipulated that both Piroozian and Homapour's consent would be required for a sale or refinancing of the Higgins Avenue Property.  *Id.* ¶ 39.  Since this 2010 agreement, Homapour has controlled Higgins Ave LLC as the manager of the LLC.  *Id.* ¶ 3.

On January 12, 2018, Homapour entered into an agreement on behalf of Higgins Ave LLC settling the litigation brought by Stathakis.  *Id.* ¶ 40.  Pursuant to this settlement, Higgins Ave LLC agreed to pay $5.8 million to Stathakis.  *Id.*  Homapour entered into this settlement without Piroozian's consent and over his objections.  *Id.* ¶ 46.  Piroozian alleges that the

settlement overvalued the property, was not in the best interests of Higgins Ave LLC, and failed to enforce the obligation of Higgins Ave LLC's title insurer to contribute funds towards the settlement and associated attorneys' fees. *Id.* ¶¶ 47–49. Piroozian further alleges that by entering this settlement, Homapour breached his fiduciary duties to Higgins Ave LLC. *Id.* ¶ 50.

Settlement in hand, Homapour and his sons Jeffrey and Justin formed their own limited liability company—Judgement Buyers LLC—which purchased Higgins Ave LLC's outstanding mortgage loan of approximately $2.7 million from Chinatrust Bank. *Id.* ¶ 95. The new LLC loaned Higgins Ave LLC an additional $5 million to pay its obligations under the settlement. *Id.* ¶ 99. Notwithstanding the provisions of the Queens Warehouse Agreement that Piroozian contends requires it, Homapour neither solicited nor obtained Piroozian's consent to the additional financing. *Id.* ¶¶ 99, 100, 107. Under the burden of its increased debt load, Higgins Ave LLC, at the direction of Homapour, then allowed its debts to Judgement Buyers LLC to go into default, so that it was charged the increased default interest rate on its loan payments for the next two and a half years. *Id.* ¶¶ 105–06.

Piroozian alleges that this conduct by the Homapours and Judgement Buyers LLC constitutes mail and/or wire fraud. *Id.* ¶ 118. Separately, Piroozian alleges that the Homapours committed extortion in violation of the Hobbs Act by using the threat of foreclosure on the Higgins Avenue Property to induce him, and Higgins Ave LLC, to make payments on the improper loan. *Id.* ¶ 134. These violations are alleged to be the predicate acts in an overall pattern of racketeering activity conducted by an enterprise consisting of Shahriar and Justin Homapour as well as Judgement Buyers LLC, whose purpose was to defraud Piroozian and Higgins Ave LLC. *Id.* ¶¶ 111–16. Therefore, Piroozian claims that the Homapours injured him in violation of all four substantive provisions of RICO, 18 U.S.C. § 1962(a)-(d), and are liable to

3

him for treble damages and attorney's fees.  Compl. ¶¶ 144–66.  Additionally, Piroozian brings New York state law claims for (i) aiding and abetting breach of fiduciary duty; (ii) civil conspiracy; (iii) tortious interference with contract; and (iv) unjust enrichment.  *Id.* ¶¶ 167–94.

<u>Applicable Law</u>

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint contains facts sufficient to make a plausible case.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–58, 127 S. Ct. 1955, 1965–67, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  While not "akin to a 'probability requirement,'" the plausibility pleading standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

In the course of making a determination as to whether a pleading plausibly states a claim upon which relief can be granted, the district court should "draw all reasonable inferences in Plaintiff['s] favor."  *Faber*, 648 F.3d at 104.  It must also accept well-pleaded facts as true, and consider them in the light most favorable to the non-moving party.  *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008).  At the same time, a court is generally limited to allegations made within the four corners of the complaint.  *Semente v. Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 120 (E.D.N.Y. 2015).

<u>Discussion</u>

    *A.     RICO*

"Congress enacted RICO in 1970 as part of the Organized Crime Control Act 'to seek the eradication of organized crime in the United States.'"  *Am. Fed'n of State, Cnty. & Mun. Emps.*

*Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013) (quoting Pub. L. No. 91-452 (1970)).  Although essentially a criminal statute, RICO also permits "'[a]ny person injured in his business or property by reason of a violation of section 1962' to bring a private civil suit in federal district court and authorizes the recovery of treble damages, attorney's fees, and costs." *Bascuñán v. Elsaca*, 874 F.3d 806, 815–16 (2d Cir. 2017) (quoting 18 U.S.C. § 1964(c)).  "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted).  As must be imagined, because "the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants," and because "the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit 'garden variety fraud' claims within the standard of civil RICO," district courts have "an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Rosenson v. Mordowitz*, No. 11-cv-6145 (JPO), 2012 WL 3631308, at *4–*5 (S.D.N.Y. Aug. 23, 2012) (citation omitted).  In section 1962, RICO "sets forth four specific prohibitions aimed at different ways in which a pattern of racketeering activity may be used to infiltrate, control, or operate 'a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.'" *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 330, 136 S. Ct. 2090, 2097, 195 L. Ed. 2d 476 (2016) (quoting 18 U.S.C. § 1962).

> These prohibitions can be summarized as follows. Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Finally, § 1962(d) makes it unlawful to conspire to violate any of

the other three prohibitions.

*Id.*

Piroozian has brought claims under each of these four subsections.  Compl. ¶¶ 144–66. To establish a civil RICO claim under any or all of the four, "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through either a pattern of racketeering activity or the collection of an unlawful debt." *Contract Transp. Servs., Inc. v. New Era Lending LLC*, No. 17-cv-8224 (AT), 2018 WL 11226077, at *2 (S.D.N.Y. 2018).  But, in a fundamental and fatal flaw, Piroozian fails to plausibly plead a "pattern of racketeering activity," which is defined by the RICO statute to include an exhaustive list of predicate "acts," including mail fraud, wire fraud, and extortion— each of Piroozian has alleged.  *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include offenses indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1951 (extortion)).  Stating a civil RICO claim requires the plaintiff to satisfactorily plead the elements of two or more of these acts. *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

As to mail and wire fraud, Piroozian's allegations are too conclusory to survive a motion to dismiss.  "The mail fraud and wire fraud statutes prohibit a person who 'devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' from using the mails or interstate or foreign wire facilities 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Crawford v. Franklin Credit Mgmt. Grp.*, 758 F.3d 473, 488 (2d Cir. 2014) (quoting 18 U.S.C. §§ 1341, 1343).  "To establish a 'scheme to defraud,' the plaintiff must prove '(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations.'" *Reiner v. Paneth*, No. 24-cv-4914 (RER) (PK), 2025 WL 2783246, at *16 (quoting *United States v. Pierce*, 224 F.3d 158, 165

6

(2d Cir. 2000)).

Moreover, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to state the circumstances constituting fraud "with particularity," apply to RICO claims based on mail and wire fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); Fed. R. Civ. P. 9. To meet this requirement, a plaintiff must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). "[I]n cases in which the communications are not themselves misleading, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Jordan v. Pierre*, No. 18-cv-8528 (JGK), 2021 WL 2581444, at *4 (S.D.N.Y. June 22, 2021) (citation omitted).

With respect to this claim, the complaint falls short of this standard. The complaint does not detail any fraudulent statements made by Homapour or his sons, specify their time, place, speaker, or content, or explain how they were fraudulent. The only use of wire communication by defendants that Piroozian pleads is Homapour's use of the mail to send checks to Judgement Buyers LLC on behalf of Higgins Ave LLC to make payments on the mortgage loan. *See* Compl. ¶ 123. The complaint does not allege that Homapour misrepresented the terms of the refinancing to Piroozian, nor that his decision to settle the case against the property's former owners involved any falsehoods or deceit. Thus, the cause of action must be dismissed as it does not "adequately specify the statements it claims were false or misleading, give particulars as to

7

the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin*, 962 F.3d at 191.

Nor does the pleading provide a description of the underlying scheme and its connection with mail and wire communications. At most, Piroozian has alleged that Homapour breached their 2010 separation agreement by refinancing the Higgins Avenue Property without his consent, and breached his fiduciary duties as managing member of the LLC by entering into deals which were poorly conceived or even self-dealing, neither of which constitutes a scheme of criminality. Although Piroozian may have stated a claim for breach of fiduciary duty against Homapour, pleading a scheme to defraud requires more. A scheme to defraud is "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching," *Williams*, 889 F.3d at 124, a "nontechnical standard" which is "a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Bayshore*, 667 F. Supp. 3d at 124 (citation omitted). Taken as true at this stage of the litigation, Piroozian's allegations show only that Homapour mismanaged the property through his handling of its mortgage debts and settlement obligations, and breached a contractual duty by refinancing the loans without Piroozian's consent. This falls short of the "deceit" or failure of "moral uprightness" necessary to make out a claim for wire or mail fraud, and certainly does not plead the complex scheme of criminality targeted by RICO.

The Hobbs Act terrain is just as rocky. Though he purports to do so, Piroozian fails to allege facts sufficient to plead extortion for purposes of the Hobbs Act. "A defendant commits Hobbs Act extortion when he (1) obtains the victim's tangible or intangible property, (2) with the victim's consent, (3) by inducing such consent (4) through wrongful use of force, threatened

8

force, violence, or fear (including fear of economic and reputational harm), or under color of official right." *Reiner*, 2025 WL 2783246, at *21; *see also* 18 U.S.C. § 1951(b)(2). Under Supreme Court precedent, the legislature's use of "wrongful" in the Hobbs Act means that the Hobbs Act applies only to violence or threats "used to obtain an objective that is itself unlawful," in the sense that the statute is limited to coverage of instances "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Kirsch*, 903 F.3d 213, 222–23 (2d Cir. 2018) (quoting *United States v. Enmons*, 410 U.S. 396, 400, 93 S. Ct. 1007, 1009–10, 35 L. Ed. 2d 379 (1973)).

Stretching to scrape together enough to support the extortion claim, Piroozian argues that because Judgement Buyers LLC had the power to foreclose on the Higgins Avenue Property after it assumed the mortgage loan from Chinatrust, it therefore used the threat of wrongful economic harm to induce Higgins Ave LLC to make payments. Compl. ¶¶ 134–35. Yet foreclosure on the property in the event that Higgins Ave LLC did not make timely payments on its mortgage would not be wrongful; indeed, Judgement Buyers LLC would then have a lawful claim to the property under the terms of the loan. Because threatening foreclosure was merely the exercise of a legal right held by Judgement Buyers LLC, it does not constitute the wrongful use of force, violence, or fear required to state a Hobbs Act claim.

The Hobbs Act extortion claim is the Rosetta Stone that lays bare the plan animating Piroozian's racketeering lawsuit. Civil RICO "should not be used to transform a garden variety fraud or breach of contract case . . . into a vehicle for treble damages." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) (internal quotation marks omitted). That is what Piroozian's complaint amounts to: an attempt to cast standard claims for breach of contract and breach of fiduciary duty as criminal wrongdoing in order to fit them into the

9

framework of a civil RICO claim.  The fundamental shortfall in Piroozian's pleading, to put it differently, is that RICO is aimed at "long-term criminal conduct," but none of Homapour's alleged actions constitute criminal conduct or indeed racketeering activity at all.  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989).[2]

There are other hurdles not vaulted.  For example, Piroozian has failed to allege an "enterprise" for RICO purposes.  RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Boyle v. United States*, 556 U.S. 938, 945, 129 S. Ct. 2237, 2243, 173 L. Ed. 2d 1265 (2009) (citation omitted).  The enterprise "must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise."  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (citations omitted).  "[A] corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)" and therefore may only be held liable as a defendant "where it associates with others to form an enterprise that is sufficiently distinct from itself."  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).  "In assessing

---

[2] Piroozian's RICO claim fails for an independent but equally fatal reason.  Procedurally, Piroozian has not alleged the necessary "pattern" of racketeering activity.  To establish a pattern for RICO purposes, the plaintiff "must plead at least two predicate acts . . . and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity."  *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citing *H.J. Inc.*, 492 U.S. at 239).  In other words, in the "absence of a predicate racketeering act, no 'pattern' of racketeering activity can exist."  *Katzman*, 167 F.R.D. at 656.  No such predicate act has been plausibly pleaded in Piroozian's complaint.

whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist were the predicate acts removed from the equation." *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 215 (S.D.N.Y. 2000) (citation omitted).

The "enterprise" as alleged in this lawsuit is defined as an entity consisting of the Homapours and Judgement Buyers LLC, which were allegedly organized for the common purpose of defrauding Piroozian.  Compl. ¶¶ 111–15.  Piroozian's complaint, however, fails to state factual allegations to show how this grouping constitutes a distinct enterprise from Judgement Buyers LLC itself, of which Shahriar Homapour has "complete control and influence over the formation and management." *Id.* ¶ 83.  Piroozian cannot circumvent the distinctness requirement "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001) (citation omitted).  Managing the Higgins Avenue Property and its associated debts was the regular, day-to-day business of the LLC, and "where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* (citation omitted).  Therefore, no distinct RICO enterprise exists here beyond the legitimate business entity of which the Homapours are members.

Furthermore, Piroozian has failed to plead specific factual content showing the enterprise's "hierarchy, organization, and activities" or internal structure, does not plead each defendant's role in the claimed fraudulent conduct and show their connection to the predicate acts in the case, and has not showed that defendants acted as either "a continuing unit" or an

11

"ongoing organization, formal or informal." *Edmond*, 2019 WL 8111919 at *5 (citations omitted). Since the complaint alleges that Homapour is responsible for the predicate acts at issue through an LLC he wholly controlled, with his sons as only nominal participants, the roles of Homapour's sons have not been sufficiently pled for them to serve as part of an "enterprise" for RICO purposes. *See* Compl. ¶¶ 83–93 (Homapour "controlled all aspects" of Judgement Buyers LLC). At bottom, Piroozian's failure to allege an enterprise made up of the Homapours and their family business stems from the same underlying issue as his failure to allege predicate acts of criminality: the factual allegations here fit more comfortably in a standard breach of fiduciary duty claim against Homapour than they do in the multifaceted and procedurally demanding posture of a RICO claim.

Although, upon a proper showing, leave to amend should be freely granted, Piroozian has not sought leave to amend his complaint, and the complaint and opposition papers fail to plausibly allege facts suggesting that any proposed amendment would be anything but futile. Where a plaintiff "is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice," as it is here. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Therefore, all of Piroozian's federal claims are dismissed with prejudice. Declining to exercise supplemental jurisdiction, Piroozian's state law claims are dismissed without prejudice and with leave to replead in a state court of appropriate jurisdiction.

Conclusion

For the foregoing reasons, the motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated:   Brooklyn, New York

12

April 15, 2026

/s/ Eric N. Vitaliano

ERIC N. VITALIANO

United States District Judge